UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Lacy,<br><br>   Plaintiff,<br><br>  v.<br><br>Commissioner of Social Security,<br><br>   Defendant | No. 1:25-cv-00974-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSION OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>(ECF No. 10, 12) |

### I. **Introduction**

Plaintiff John Lacy seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits pursuant to Title II of the Social Security Act.

### II. **Procedural Background**

On April 22, 2022, Plaintiff applied for Social Security Disability Insurance Benefits alleging a disability onset date of November 5, 2021. Plaintiff's application was denied initially on September 22, 2022, and upon reconsideration on June 12, 2023. AR 141. An administrative hearing before an ALJ was held on June 13, 2024. AR 36–64.

The ALJ issued an unfavorable decision on June 28, 2024. AR 14–35. The Appeals Council denied review on June 20, 2025. AR 1–6. Plaintiff now seeks judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g), 1383(c)(3).

1

### III.    <u>The Disability Standard</u>

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a Claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a Claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the Claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a Claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the Claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the Claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the Claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 5, 2021. AR 19. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with peripheral neuropathy, transmetatarsal left foot amputation with Achilles tendon lengthening, and exogenous obesity. AR 19.

The ALJ also found at step two that Plaintiff had non-severe impairments of: essential hypertension, hyperlipidemia, chronic kidney disease, torticollis, and adjustment disorder with mixed features of anxiety and depression. AR 20–22.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22–24.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 404.1567(b) with the following limitations:

he can stand or walk for 2 hours during an 8-hour workday. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can frequently push or pull with his left lower extremity. He must avoid concentrated exposure to hazards such as unprotected heights and moving machinery. He requires the use of a cane for uneven terrain and long-distance ambulation, defined as 200 feet or more. He can frequently feel with his bilateral hands. He would be off task 5% of the workday.

AR 24–29.

At step four, the ALJ found that Plaintiff had no past relevant work. AR 29. At step five, relying on the VE's testimony, the ALJ found that considering the Plaintiff's age, education, work experience and RFC, the Plaintiff could perform the following jobs existing in significant numbers in the national economy: cashier II and ticket seller. AR 30.

Accordingly, the ALJ concluded that the Plaintiff was not disabled since the alleged disability onset date of November 5, 2021. AR 31.

## V.      Summary of Medical and Expert Evidence

Plaintiff has type 2 diabetes. He had a podiatry visit in August 2021 which noted bilateral foot ulcers. AR 609. In November 2021 his left great toe was amputated. In April 2022 he underwent transmetatarsal left foot amputation. AR 399. Plaintiff testified that his good foot still blisters and develops sores with extended exertion. AR 53.

His diagnosis of loss of bilateral protective sensation, rendered on 1/12/2022 (AR 631), continued through 4/3/2024 (AR 728). On June 14, 2022, Plaintiff was assessed with an acute kidney injury with a creatinine level of 0.9 mg/dl due to medication. AR 652. At a visit with podiatry on April 3, 2024, there was a recommendation for metatarsal osteotomy. AR 729. It was also noted at this podiatry visit that Plaintiff no longer used his toe prosthetic due to ulcers. AR 729.

State agency medical consultants Drs. Hanna and West limited Plaintiff to sedentary work. AR 80, 81. Plaintiff's primary care physician limited him to less than sedentary work. AR 712. Consultative psychiatric examiner Stenbeck's July 19, 2022 MRFC questionnaire noted that Plaintiff was moderately limited in his ability to complete a workday/workweek without interruptions due to a psychiatric condition, accept instructions from supervisors, interact with co-

4

workers and the public, and deal with usual stressors of competitive work environments. AR 679. Consultant Dr. Sharma examined Plaintiff on July 30, 2022, and rendered diagnoses mirroring Plaintiff's diagnoses to date.  AR 682.  Dr. Sharma opined as to light exertional capacity but with 2 hours of cumulative standing/walking with appropriate breaks, occasional bend/stoop, limited fine and gross manipulations, and frequent feeling of objects bilaterally.

### VI.    Issues Presented

Plaintiff asserts five, often overlapping, claims of error: 1- "The ALJ erred by failing to properly assess Plaintiff's symptoms in accordance with Social Security Ruling 16-3P" (MSJ at 5, Doc. 10); 2- "The ALJ's finding that Plaintiff can perform light work is not supported by substantial evidence." (MSJ at 12); 3- "Plaintiff's residual functional capacity, as determined by the ALJ, should be found to be at the sedentary exertional level."  (MSJ at 13); 4- "The ALJ erred by failing to find Plaintiff's Mental Health Impairment a severe impairment."  (MSJ at 14); 5- "The ALJ erred when she found jobs that exist in significant numbers in the national economy." (MSJ at 15).

### A.    Symptoms, Subjective Complaints, Exertional Capacity, RFC

#### 1.    Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a Plaintifft's testimony regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the Claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the Claimant satisfies the first step and there is no evidence of malingering, the ALJ must

5

"evaluate the intensity and persistence of [the Claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a Claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of Claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the Claimant uses to relieve pain or other symptom; and 7- Other factors concerning the Claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2.    Analysis

#### a.    General discussion

Plaintiff begins by quoting and then critiquing the sufficiency of the ALJ's introductory language. MSJ at 5, quoting AR 25, "After careful consideration of the evidence [claimant's MDIs] . . . could reasonably be expected to cause symptoms . . however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are [unsupported] . . . for the reasons explained in this decision." AR 25.

Plaintiff contends that "It is not sufficient for the adjudicator to make <u>a single, conclusory statement </u>that the individual's statements about his or her symptoms have been considered or that the statements about the individual's symptoms are (or are not) supported or consistent." <u>Id.</u> (emphasis added). Although this contention is certainly correct, it is of minor significance here as the ALJ's "single, conclusory statement" appears <u>at the beginning of the RFC analysis and </u>does not purport to be sufficient, nor does the Court construe it as such.

6

Plaintiff then identifies the following records he contends are supportive.

1. <u>Merced Podiatry Group</u>: 11/4/2021 "Surgical plan is amputation left hallux." AR 624. Diagnosis of LOPS (Loss of protective sensation) bilaterally. AR 623. The same diagnosis continues through 4/3/2024. AR 728.

2. <u>Mercy Medical Center</u>: 4/8/2022 Transmetatarsal amputation with Achilles tendon lengthening left foot. AR 600. 4/14/2022 Patient presented with right foot ulcer and was admitted for osteomyelitis treatment. Assessment includes a diagnosis for acute kidney injury. AR 570.

3. <u>Castle Family Health Centers</u>: 6/3/2022 Diagnosis of moderate major depression with a prescription of escitalopram 20 mg daily. AR 698. The same assessment and prescription repeated in 8/10/2022 chart notes. AR 692. 6/14/2022 Diagnosis of acute kidney injury secondary to medication induced by vancomycin/zosyn combination. AR 652.

4. <u>CE Satish Sharma</u>, M.D.: 7/30/2022 "Sensations are decreased to pinprick in the stocking, glove distribution of both upper and lower extremities up to the level of the calves in the lower extremities and mid forearms in the upper extremities." "On gait examination, he walks with a wide-based gait with limp on the left lower extremity. He could not do toe walking and heel walking." AR 682.

5. <u>CE Lauri Stenbeck</u>, Psy.D.: 7/19/2022 Doctor's diagnostic impression is: major depressive disorder, recurrent, moderate. AR 678. Claimant's current psychotropic medication: escitalopram. AR 676.

Importantly, Plaintiff does not contend that the ALJ disregarded this evidence, nor does Plaintiff explain what impact this evidence should/would have on the RFC.

**b.    The ALJ's reasoning for discrediting testimony**

Plaintiff's analysis begins at page 9 of 15 wherein Plaintiff states:

The ALJ states that "treatment notes after April 2022 showed appropriate healing of the claimant's partial left foot amputation surgical site without significant complications." AR 26. She notes that treatment records from 1/19/2023 indicate that Plaintiff "denied noticing any open wounds or having any specific concerns… His amputation filler was modified, and he had been wearing it without any complications." AR 26. She points out that the medical records mention that Plaintiff had recently gone on vacation without any problems; the claimant's physical examinations were generally normal. AR 26. "Side effects to medication were not documented" but "the claimant testified that he had side effect issues once or twice a month and symptoms of diarrhea due to diabetes." AR 27. The ALJ states several times that Plaintiff "did not stop working due to his impairments, but due to relocating for other reasons." AR 27. The ALJ also states several times that Plaintiff "testified that he went on a seven night cruise with another couple, and that the ship was mostly handicapped accessible." AR 26. The ALJ highlights these activities even though the activities are not inconsistent with the evidence in the record. Plaintiff stopped working in January 2019 as he relocated, but his impairment and onset of disability did not occur until November 2021. AR 43. Plaintiff testified and described the March 2023 vacation at trial. AR 54, 55. He did not have any issues with his foot at the time; this testimony is not inconsistent with the evidence in the record.

As to the ALJ's reliance on the 7 night cruise and Plaintiff's reasoning for leaving work, the ALJ simply mentioned these two among a list of other reasons, including but not limited to: 1- treatment notes after April 2022 showed appropriate healing of the claimant's partial left foot amputation surgical site without significant complications (AR 26); 2- treatment records from 1/19/2023 indicate that Plaintiff denied noticing any open wounds or having any specific concerns … 3- His amputation filler was modified, and he had been wearing it without any complications (AR 26); 4- physical examinations were generally normal (AR 26);  and 5-  significant side effects to medication were not documented, though Plaintiff did testify that he had side effects once or twice a month including diarrhea.  AR 27.   Importantly, the ALJ did not discredit the entirety of Plaintiff's allegations of ambulation difficulty.  To the contrary, the RFC specifies no more than 2 hours of walking during an 8-hour workday, whereas light work generally requires 6 of 8 hours. (SSR 83-10).  The RFC further reflects the need for use of a cane when traversing uneven terrain

8

and for long-distance ambulation, defined as 200 feet or more.

Plaintiff further states:

The ALJ states that 'side effects to medication were not documented." AR 27. On the contrary, Dr. Rodriguez documents an acute kidney injury secondary to medication. AR 652. The ALJ states that treatment notes after April 2022 showed appropriate healing of Plaintiff's partial left foot amputation surgical site without significant complications. AR 26. As already pointed out, Plaintiff was diagnosed with an acute kidney injury one week post-surgery. She states that Plaintiff's "amputation filler was modified, and he had been wearing it without any complications." AR 26. Within the same paragraph she notes that Plaintiff "was not using his prosthetic on the left due to getting a blister in the area. Plaintiff also reported that he stopped wearing his orthotics because his insert was creating sores on his left foot. AR 26.

MSJ at 11.

As to the acute kidney injury secondary to medication, Plaintiff neither explains nor offers support for the implicit contention that this caused ongoing work-related limitations.

Plaintiff also disputes the ALJs statement that he wore his amputation filler without "any complications", arguing that the same paragraph reflects the prosthetic caused blisters. Yet Plaintiff does not elaborate on how these blisters affected his mobility, nor how this finding by the ALJ created harmful error.  Of significance, records after April 2022 show appropriate healing without significant complication (AR 26, 643, 655).  Although Plaintiff ambulated slightly irregularly with a limp and used a cane on uneven ground and when traversing long distances, progress notes indicate benign findings and normal ROM in his foot.  AR 26, 686, 697, 726, 719.

### c.    **Mental Health**

Plaintiff argues:

The ALJ refers to Plaintiff's spouse's third-party function reports and states that his spouse "did not report the claimant as having more than <u>mild</u> mental limitations, and she only reported some issues with handling stress or changes in routine." AR 25. The ALJ does not discuss the evidence in the record of Plaintiff's mental health, and does not mention his diagnosis of <u>moderate</u> major depression from both the CE Lauri Stenbeck Psy.D. and Plaintiff's primary care physician.

MSJ at 11–12.

To begin, third party testimony is relevant regardless of whether it supports or detracts from the disability claim.  Thus, it was appropriate for the ALJ to consider Plaintiff spouse's third party report of only <u>mild</u> mental limitations. Plaintiff contends however that the ALJ's reliance on this third party report was a selective view of the mental health evidence given  that consultative examiner Dr. Stenbeck, as well as Plaintiff's primary care physician, opined as to <u>moderate</u> mental limitations, including his moderately limited ability to: complete a workday/workweek without interruptions from psychiatric condition; accept instructions from supervisors; interact with co-workers and the public;  and deal with usual stressors of competitive work environments. AR 679.

Instructively, the applicable caselaw on this point indicates that even "Moderate" mental limitations are not per se disabling.  <u>See,</u> *Rose M. E. v. Saul*, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'") (citing HALLEX (Hearings Appeals and Litigation Law Manual) I-2-5-20, referencing Form HA-1152-U3 (Medical Source Statement of Ability to do Work-related Activities (Mental)).

Plaintiff's subsequent argument that his mental health impairments and corresponding "moderate" limitations should have been categorized as severe, is similarly unavailing as it would not impact the outcome.

### d.    Light Exertional RFC vs. Sedentary

Plaintiff argues that the light exertional RFC is not supported here.  On this point, Plaintiff points to the following:

> The ALJ determined that Plaintiff has the residual functional capacity to perform light work except that he can stand or walk for 2 hours during an 8-hour day. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He can never climb ladders, ropes or scaffolds. He can frequently push or pull with his left lower extremity. He must avoid concentrated exposure to hazards such as unprotected heights and moving machinery. He requires the use of a cane for

10

uneven terrain and long-distance ambulation, defined as 200 feet or more. He can frequently feel with his bilateral hands. He would be off task 5% of the workday. AR 24.

Plaintiff argues that the ALJ's finding that Plaintiff could perform light work is unsupported because: 1- the VE testified that, as to the residual functional capacity provided by the ALJ, "this is pretty sedentary RFC, in my opinion," (AR 60) and 2- the VE also stated that "the cashier II is essentially being performed at sedentary." AR 59.

However, the VE testified that the position of Cashier II is "essentially performed at sedentary," which actually lends even more support to the ALJ's RFC because the reduced range of light work would demand no more standing/walking than an unlimited range of sedentary work.  See SSR 83-10.  Specifically, the position of Cashier II ("essentially sedentary" per the VE) would require Plaintiff to do no more standing and walking than the RFC requires, which is 2 of 8 hours.

Also, Plaintiff's contention in regard to the claimed impact of the categorization of exertional capacity, light vs. sedentary,  would have on the medical vocational guidelines (the grids) for an individual with his vocational profile, is not altogether relevant given that Plaintiff does not dispute his ability to meet the lifting/carrying and other physical demands of light work.

Finally, a standing/walking capacity consistent with sedentary work supports the available jobs the VE identified.  Plaintiff's undisputed ability to meet the lifting, carrying and other demands of light exertional work would support the RFC, which, as set forth above, specifies a reduced range of light work.  And imprecise statements from the VE that the RFC is "essentially sedentary" does not establish otherwise regardless of the impact the grids would have on someone with Plaintiff's vocational profile who is limited to sedentary work.  Specifically, even if the grids would yield a disability finding for someone of Plaintiff's vocational profile who was limited to

11

sedentary work…Plaintiff was <u>not</u> limited to sedentary work, and this is true for reasons other than standing/walking capacity.

### VII.    Conclusion and Order

Substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 10) is **DENIED**.
2. Defendant's cross motion (Doc. 12) is **GRANTED.**
3. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:    **February 25, 2026**              **/s/ Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE